**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **PAUL MUHIRWA GITWAZA** | § | |
| | § | |
| **VS.** | § | **ACTION NO. 4:22-CV-434-P** |
| | § | |
| **MERRICK B. GARLAND, ET AL.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR  SUMMARY JUDGMENT

Pending before the Court are Defendants' Motion for Summary Judgment [doc. 25], filed May 19, 2023, and (2) Plaintiff's Cross Motion for Summary Judgment [doc. 28], filed May 21, 2023.  Having carefully considered the motions, responses, and reply, the Court **FINDS** and **CONCLUDES** that Defendants' Motion for  Summary Judgment should be **DENIED** and Plaintiff's Cross Motion for Summary Judgment should be **DENIED** as genuine issues of material fact exist, and, pursuant to 8 U.S.C. § 1421(c), this case should be returned to the District Court Judge to conduct a *de novo* hearing on Plaintiff's application.

## I.  RELEVANT BACKGROUND

Plaintiff Paul Muhirwa Gitwaza is a citizen of Rwanda and has been a lawful permanent resident of the United States since July 26, 2013.  (Plaintiff's Complaint for Declaratory and Injunctive Relief and for Hearing on Naturalization Application ("Pl.'s Compl.") at 1.)  Based on an incident allegedly occurring on June 9, 2017, Plaintiff was arrested on September 30, 2018 and charged in the Kings Criminal Court, Brooklyn, New York, with Sexual Abuse in the Third Degree in violation of New York Penal Law ("NYPL") § 130.55, a class B misdemeanor, and Forcible Touching—Intimate, in violation of NYPL § 130.52(01), a class A misdemeanor. (Defendants' Appendix to Motion for Summary Judgment ("Defs.' App.") at 2, 6.)  There is a factual dispute between Plaintiff and Defendants regarding whether Plaintiff entered a "pre-plea"

or a "temporary plea" to the initial charges.[1]  On March 13, 2019, Plaintiff pled guilty to the lesser charge of Disorderly Conduct in violation of NYPL § 240.20, which is classified under New York law as a violation. (Defs.' App. at 5-6.)  An Adjournment in Contemplation of Dismissal Conditional Discharge and Pre-Sentence Conditions, also dated March 13, 2019, shows that Plaintiff was: (1) sentenced to a one-year conditional discharge, to expire on March 12, 2020; (2) ordered to pay a mandatory surcharge and other fees; and (3) ordered to complete a sex offender program and that failure to do so would result in fifteen days in jail.[2]  (Defs.' App. at 5.)  On March 13, 2019, a judge at the Kings Criminal Court also entered an Order of

---

[1] The undersigned is unfamiliar with the terms "pre-plea" and "temporary plea" as these must be terms of art in New York criminal law.  Defendants argue that Plaintiff did enter such a pre-plea or temporary plea, which is an admission that he engaged in the acts for the crimes initially charged even if such pre-plea was later vacated and a plea to Disorderly Conduct was entered.  Defendants, in support of their argument, point to a "Brief in Support of Plaintiff's N-336 Application" ("Plaintiff's Application Brief") that Plaintiff's attorney, Ryanne Konan [("Konan')], submitted on February 4, 2022 to the United States Department of Homeland Security Citizenship and Immigration Services.  In Plaintiff's Application Brief, Konan states:

> The parties agreed that Applicant would enter a temporary guilty plea to the charges, and the judge would order treatment; and then after the treatment would successfully be completed, the plea would be vacated, and a plea of disorderly conduct would be entered.  As we do it in New York, Applicant agreed to enter a pre-plea to the charges, and after the treatment was completed, the Plea to the charges was vacated, and a plea to disorderly conduct was entered.

(Defs.' App. at 46.)  Konan, at the hearing, argued that his statements in the letter were incorrect and that Plaintiff never entered a pre-plea or a temporary plea and only entered a plea to Disorderly Conduct.

While Konan's statements to the Court at the hearing do not constitute competent summary judgment evidence, they do demonstrate the confusion and difficulty the Court has encountered in deciphering exactly what transpired in the New York court system regarding Plaintiff's arrest and ultimate conviction for Disorderly Conduct. The New York court transcripts show that multiple hearings were held regarding Plaintiff's case, where different judges, prosecutors, and, at times, attorneys representing Plaintiff appeared, and all seemed somewhat uncertain about the details of Plaintiff's case.  (Defs.' App. at 7-35.)

From a review of the New York court records and transcripts submitted by Defendants, there is no indication that Plaintiff ever entered into a pre-plea or temporary guilty plea to the initial charges he was arrested for that was vacated when he entered a plea to Disorderly Conduct.  (See Defs.' App. at 1-35.)  In fact, in a transcript dated November 21, 2019, from the Criminal Court of the City of New York County of Kings regarding whether Plaintiff had completed his six months of sex offender treatment that was ordered as a part of his plea agreement to Disorderly Conduct, the judge stated, "This is not a pre-plea thing, is it?  Please tell me it is not."  (Defs.' App. at 31.)  In response, Andrew Lee, one of the Assistant District Attorneys appearing at the hearing stated, "I am not sure, Your Honor.  I don't believe so."  (Id.)  The judge then asked, "Was there a plea at some point?"  (Id.)  In response, Plaintiff's attorney, Jean Paul Shaka, responded, "He pled to a violation, Your Honor."  (Defs.' App. at 31.)

[2] The Court notes that this form is very difficult to read due to the manner in which it was copied.

Protection that was effective until and including March 12, 2021, and ordered Plaintiff to have no contact with the alleged victim. (Defs.' App. at 4.) Plaintiff encountered difficulty in completing his required sex offender treatment because, after passing a polygraph test that questioned him about his conduct with the alleged victim, Plaintiff's therapist in Texas terminated the treatment, stating that it was unethical for the therapist to "heal somebody who is not a sex offender." (Defs.' App. at 12; *see* Plaintiff's Appendix to Motion for Summary Judgment [doc. 38], at 1-7.)[3] In January 2020, Plaintiff completed all required evaluations, classes, court appearances, and adherence to the restraining order concerning his conviction for disorderly conduct. (Defs.' App. at 52.)

On May 18, 2022, Plaintiff filed a Complaint seeking *de novo* review and requested a hearing by this Court on his Form N-400 Naturalization Application ("Form N-400 Application"), which was filed on September 16, 2020, and denied initially by Defendant United States Citizenship and Immigration Services ("USCIS") on January 28, 2022. (Defs.' App. at 51-56.) In the denial, the USCIS found that, pursuant to 8 C.F.R. § 316.10(b)(3)(iii), Plaintiff had not established during the statutory period that he was a person of good moral character based on Plaintiff's conviction for Disorderly Conduct stemming from charges of sexual abuse and forcible touching that occurred during the statutory period and Plaintiff's failure to establish extenuating circumstances.[4] (Defs.' App. at 52-53.) Plaintiff requested reconsideration and, on

---

[3] This appendix was filed late because Plaintiff's initial appendix [doc. 30] did not include any actual exhibits.

[4] In the initial decision dated January 28, 2022, the USCIS Field Officer Director, after setting forth all the evidence, stated:

> To be eligible for naturalization, you must demonstrate that you are a person of good moral character. USCIS finds your conviction for disorderly conduct occurred during the statutory period to determine good moral character for naturalization is an unlawful act. See INA sections 316(a) and 101(f). Additionally, you have not established any extenuating circumstances that would warrant a departure from this finding. Since you have not established that you are a

April 11, 2022, Plaintiff appeared for a hearing before the USCIS to review the denial of his Form N-400 Application. (Defs.' App. at 57.)

At the USCIS hearing, Plaintiff submitted a letter in which he, *inter alia*, denied forcibly touching or committing any kind of sexual abuse upon the woman who made the allegations against him ("the alleged victim") that resulted in his arrest. (Defs.' App. at 38.) In the letter, Plaintiff claimed that he had been falsely accused by the alleged victim, who he had originally met in 2005 when he baptized her in France. (*Id.*) Plaintiff further stated that he reconnected with the alleged victim when she saw him in New York one day and, eventually, the alleged victim became "one of [his] family." (*Id.* at 38-39.) He claimed that the incident occurred when the alleged victim invited him to stay at her apartment to pray for her when Plaintiff was visiting "the ambassador in New York." (*Id.* at 39.) Plaintiff further stated that: (1) the alleged victim acted inappropriately toward him; (2) he refused her advances; and (3) he, ultimately, "kicked her (with [his] foot) to go out from the room, she struck the room door, then she left." (*Id.* at 39-40.) Plaintiff, in the letter, also set forth his personal and work background, as well as how he had been a good and moral citizen. (*Id.* at 36-38.) In a decision dated May 4, 2022, the USCIS reaffirmed its denial of Plaintiff's Form N-400 Application. ("Defs.' App. at 51-62.)

## II.    PARTIES' ARGUMENTS

In Defendants' Motion for Summary Judgment, Defendants argue that Plaintiff "has the burden of establishing that he met the good moral character requirement," and that Plaintiff cannot do so "because [Plaintiff] pled guilty to an offense arising out of his sexual abuse of a

---

person of good moral character because of the crime for which you have been convicted, you are ineligible for naturalization at this time. See INA 101(f) and 316(a)(3) and Title 8, Code of Federal Regulations (8 CFR), section 316.10(b)(3)(iii).

(Defs.' Appt. at 53.)

4

woman in New York City." (Defendants' Brief in Support of Motion for Summary Judgment ("Defs.' Br.") at 4.) Defendants claim that there is no dispute that Plaintiff engaged in an unlawful act "as touching '[a woman's.] bare breasts . . . without [her] consent . . . is 'against moral or ethical standards.'" (Defs.' Br. at 6.)

At the hearing on the parties' motions for summary judgment, Defendants argued that Plaintiff's act of entering into a temporary plea or pre-plea agreement to Sexual Abuse in the Third Degree and Forcible Touching was an admission that Plaintiff engaged in these crimes, even if such temporary plea or pre-plea agreement was later vacated. Defendants further claimed that, at the very least, Disorderly Conduct[5] rises to the level of showing that Plaintiff does not have good moral character as Plaintiff admits that he kicked the alleged victim while they were alone. Defendants also argued that Plaintiff did not contend that any extenuating circumstances applied for his behavior.

In Plaintiff's Cross-Motion for Summary Judgment, Plaintiff argues that he pled to Disorderly Conduct, which is a violation and not a crime under New York law, and that he never admitted to any of the allegations of which he was accused. (Plaintiff's Brief in Support of Cross-Motion for Summary Judgment ("Pl.'s Br.") at 2-3.) Plaintiff claims that he "has never forcibly touched the alleged victim or had any kind of sexual contact with her." (Pl.'s Br. at 3.) Plaintiff states that, on March 13, 2019, he "pleaded to the violation of Disorderly Conduct in violation of New York Penal Law (NYPL) 240.20" and "never pleaded to the charges alleged in the accusatory to wit, the forcible touching and sexual abuse[ ], which were vacated." (Pl.'s Br. at 3.) Plaintiff states that "[t]here was never a pre plea agreement in this matter" and that he "only pleaded to the violation." (Pl.'s Br. at 3.) As to the sex offender program, Plaintiff states:

---

[5] Under NYPL § 70.15[4], violations such as Disorderly Conduct have a maximum sentence of imprisonment not to exceed fifteen days.

Concerning the sex offender program, it was stopped after three months because Plaintiff passed a polygraph test in the State of Texas, and the program administrator, Dr. Cameron[,] stated that he could not treat Plaintiff because Plaintiff was not a sex offender.  The victim never submitted to a polygraph test. Plaintiff could not comply with the treatment program because the doctor in charge of the program stated that Plaintiff was not a sex offender; and therefore, he could not treat someone who was not a sex offe[nder].  Plaintiff asked to withdraw the plea and go to trial after the polygraph test, but the Court declined to withdraw the plea.  A plea to disorderly conduct was first entered, but Plaintiff was not sentenced until the program had been completed.  Plaintiff pleaded to disorderly conduct on March 13, 2019, and was sentenced on January 9, 2020.

Criminal counsel of Plaintiff stated that Plaintiff entered a pre-plea to the charges, and after the treatment was completed, the plea was vacated, and a plea to disorderly conduct was entered.  However what counsel meant was that Plaintiff entered a plea to disorderly conduct because there was never a pre-plea in the criminal matter.  The record supports the finding that there was never a pre-plea in this matter.

(Pl.'s Br. at 3-4 (internal citations omitted).)  Plaintiff claims that "he pleaded to a violation, which is a petty crime, and does not affect the good moral character requirement."  (Pl.'s Br. at 4.)

At the summary-judgment motion hearing, Plaintiff further argued that he agreed to plead to Disorderly Conduct because it would not impact his immigration status as it qualified as a "petty crime" under the immigration statutes.  Plaintiff again emphasized that there was no pre-plea in this case and that he only ever pled guilty to Disorderly Conduct, which is not a crime of moral turpitude.  (*Id.*) Plaintiff claimed that, pursuant to the "petty offense exception" found in 8 U.S.C. § 1182(a)(2)(A)(ii)(II), his criminal conviction for the violation of Disorderly Conduct, which had a maximum imprisonment term of fifteen days, would prevent him from falling within the "catch-all" provision in 8 C.F.R. § 316.10(b)(3)(iii).  *See also* 8 U.S.C. § 1101(f)(3); *Laryea v. United States*, 300 F. Supp. 2d 404, 405-07 (E.D. Va. Jan. 28, 2004) (discussing the "petty offense exception").

### III.    LEGAL STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Federal Rule of Civil Procedure ("Rule") 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted).

In evaluating whether summary judgment is appropriate, the Court "views 'the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.'" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (quoting *Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005)). "After the non-movant has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment." *Woodberry*, No.

7

3:14-CV-03980-L, 2017 WL 840976, at *3 (N.D. Tex. Mar. 3, 2017) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Woodberry*, 2017 WL 840976, at *3.

Citizenship by naturalization is a privilege gained by those who meet the qualifications imposed by Congress. *See* 8 U.S.C. § 1429. Plaintiff bears the burden to show that he is eligible in every respect to become a United States citizen, and any doubts are resolved in favor of the United States. *Berenyi v. District Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967); *see* 8 C.F.R. § 316.2(b); *see Amin v. Immigr. and Naturalization Serv.*, No. 4:09-CV-623-A, 2010 WL 2034802, at *2. To be eligible for naturalization, Plaintiff must establish that he satisfies all applicable provisions of the Immigration and Nationality Act ("INA"). *See* 8 USC § 1427; 8 C.F.R. § 316.2. The only provision in dispute in this case is whether Plaintiff has met the requirement of good moral character. (*See* Pl.'s Br. at 5; Defs.' Br. at 5.)

As relevant here, Section 316 of the INA provides that "[n]o person . . . shall be naturalized unless such applicant . . . during all periods referred to in this subsection[6] has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3); *see* 8 C.F.R. §§ 316.2(a)(7), 316.10(a). "The concept of 'good moral character' is defined by the [INA] and the regulations promulgated under it." *United States v. Mwalumba*, 688 F. Supp. 2d 565, 569-70 (N.D. Tex. 2010). An applicant's "good moral character must be evaluated 'on a case-by-case basis taking into account the elements enumerated in . . . section [316.10] and the standards of

---

[6] "The statutory period for which the applicant must show good moral character begins five years prior to the date the applicant filed the application for naturalization and continues through the date the applicant takes the oath of citizenship." *Amin*, 2010 WL 2034802, at *2 (citing 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)). "The determination of good moral character, however, is not limited to the statutory five-year period" and the "USCIS 'may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to' the five-year period." *Amin*, 2010 WL 2034802, at *2 (citing 8 C.F.R. § 316.10(a)(2)).

the average citizen in the community of residence.'" *Tritten*, 2022 WL 781047, at *1 (quoting 8 C.F.R. § 316.10(a)(2)). "Both the INA and the regulations include lists of specified acts and characteristics that automatically preclude a person from establishing good moral character." *Mwalumba*, 688 F. Supp. 2d at 569-70 (citing 8 U.S.C. § 1101(f)(1)-(9); 8 C.F.R § 316.10(b)(1)- (3)); *see Amin*, 2010 WL 2034802, at *3 ("The regulations provide general guidelines as well as specific examples of acts that demonstrate a lack of good moral character."); 8 U.S.C. § 1101(f) (setting forth statutory bars to establishing that a person is of good moral character); 8 C.F.R. § 316.10(b)(1)-(2) (setting forth a similar but substantially longer list of regulatory bars to establishing that a person is of good moral character). While most of these specific examples are not applicable here, one such example is relevant as it contains what is known as "the petty offense exception" that has been argued by Plaintiff as being applicable to this case. Under this specific example of a statutory or regulatory bar establishing that a person is not of good moral character, "an applicant will be considered as lacking good moral character if he . . . has been convicted of a crime involving moral turpitude." *Amin*, 2010 WL 2034802, at *3; *see* 8 U.S.C. § 1101(f)(3); 8 C.F.R. § 316.10(b)(2)(i); *see also Laryea*, 300 F. Supp. 2d at 406. However, "this rule [regarding crimes of moral turpitude] is not absolute; there is a petty offense exception to the rule." Under the "petty offense exception," an alien who has been convicted of a crime of moral turpitude is not deemed inadmissible if:

> the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

8 U.S.C. § 1182(a)(2)(A)(ii)(II); *see also* 8 U.S.C. § 1101(f)(3).

"The INA also includes a catchall provision that allows for an adverse character finding based on 'other reasons." *Tritten*, 2022 WL 781047, at *1 (citing 8 U.S.C. § 1101(f) ("The fact that any person is not within any of the foregoing [enumerated] classes shall not preclude a finding that for other reasons such person is or was not of good moral character."); *see Amin*, 2010 WL 2034802, at *3; *see Mwalumba*, 688 F. Supp. 2d at 570 ("A 'catch-all' provision in the statutory scheme provides that non-enumerated acts or characteristics can, in the absence of extenuating circumstances, demonstrate that an applicant lacks good moral character."). Under the catchall provision, "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character, if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within" one of the enumerated classes. *Tritten*, 2022 WL 781047, at *1 (quoting 8 C.F.R. § 316.10(b)(3)(iii)). An "unlawful act" includes "bad acts that would rise to the level of criminality, regardless of whether a criminal prosecution was actually initiated." *Amin*, 2010 WL 2034802, at *3. An "unlawful act" has "also been interpreted to indicate acts that are 'against the law; illegal or against moral or ethical standards,' using the common ordinary meaning of the words." *Id*. (quoting *United States v. Lekarczyk*, 354 F. Supp. 2d 883, 887 (W.D. Wis. 2005)).

A person whose application for naturalization is denied is entitled to judicial review pursuant to 8 U.S.C. § 1421(c), which states:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make it owns findings of fact

and conclusions of law and shall, at the request of the plaintiff, conduct a hearing
de novo on the application.

8 U.S.C. § 1421(c).  "However, if a court concludes that there is no genuine issue of material

fact, it may enter summary judgment without conducting a de novo hearing." *Ni v. United States

Citizenship & Immigr. Servs.*, No. CV 08-3883 CAS (AJWx), 2009 WL 649156, at *4  (C.D.

Cal. Mar. 9, 2009) (citing *Chan v. Gantner*, 464 F.3d 289, 296 (2d Cir. 2006)).

## IV.    ANALYSIS

As stated above, an applicant for naturalization bears the burden of demonstrating that,

during the statutorily prescribed period, he has been and continues to be a person of good moral

character.  *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. §§ 316.2(a)(7), 316.10(a).  Defendants denied

Plaintiff's Form N-0400 Application for lacking good moral character pursuant to the "catch-all

provision" in 8 C.F.R. § 316.10(b)(3) based on the fact that: (1) Plaintiff committed unlawful

acts of Disorderly Conduct that adversely reflected upon his moral character or was convicted of

such acts and (2) Plaintiff had failed to establish extenuating circumstances.

Plaintiff, in his cross-motion for summary judgment and at the hearing, argues that he is

entitled to summary judgment because, as a matter of law, his conviction of Disorderly Conduct

falls into the "petty crime" exception of crimes of moral turpitude, and, consequently, he cannot

be found, under the "catch-all provision" set forth in 8 C.F.R. § 316.10(b)(3)(iii) to have

committed unlawful acts that adversely reflect upon his moral character or to be penalized for

having being convicted for such acts.  The Court, however, does not find that Plaintiff's

interpretation of this portion of the statutory and regulatory scheme regarding naturalization is

correct.

As set forth above, an applicant seeking naturalization must show that during all relevant

periods he has been and still is a person of good moral character. 8 U.S.C. § 1427(a)(3).  Section

1101(f) of Title 8 of United States Code and 8 C.F.R. § 316.10(b) enumerate specific acts or crimes, that if an applicant commits and/or is convicted of, bar an applicant from being found to have good moral character. Included in this specifically enumerated list are crimes of moral turpitude. *See* 8 C.F.R. § 316.10(b)(2)(i) Specifically, 8 C.F.R. § 316.10(b)(2)(i) states, "An applicant will be found to lack good moral character if during the statutory period the applicant . . . [c]ommitted one or more crimes involving moral turpitude . . . for which the application was convicted, except as specified in section 212(a)(2)(ii)(II) of the Act."[7] 8 C.F.R. § 316.10(b)(2)(i); *see* 8 U.S.C. § 1101(f)(3) (stating, as relevant here, that no person shall be found to be a person of good moral character who, during the relevant period, is or was a member of a class of persons that falls with 8 U.S.C. § 1182(a)(2)(A), which includes crimes involving moral turpitude). The "petty offense exception" referred to above, sets forth a limited exception to "de minimus" crimes involving moral turpitude and excludes "petty crimes" from consideration that are committed "by an alien who (1) has committed only one crime; (2) is convicted for a crime with a maximum penalty of one year imprisonment, and (3) was sentenced to imprisonment for less than six months." *United States v. Okeke*, 671 F. Supp. 2d 744, 750-51 (D. Md. 2009) (citing 8 U.S.C. § 1182(a)(2)(A)(ii)(II)).

However, even if the applicant has not committed certain crimes or been convicted of one of the crimes set forth in the enumerated lists, "the government can still revoke an individual's citizenship if he or she '[has] committed unlawful acts that adversely reflect upon the applicant's moral character,' unless the applicant can establish extenuating circumstance." *Okeke*, 671 F. Supp. 2d at 749. This referenced provision is also applicable to applicants seeking naturalization and is what is known, as discussed above, as the "catch-all provision." *Id; see United States v. Almonte*, No. 18-CV-22792-KMW, 2020 WL 13612722, at *4 (S.D. Fl. Apr. 23, 2020); 8 C.F.R.

---

[7] Section 212(a)(2)(ii)(II) of the Act is codified at 8 § U.S.C. 1182(a)(2)(A)(ii)(II).

§ 316.10(b)(3)(iii).  This "catch-all provision was intended to cover non-moral turpitude crimes and to allow the [USCIS] to set forth other reasons affecting determinations of good character." *Id*. at 751 (internal quotations omitted) (quoting *United States v. Jean-Baptiste*, 395 F.3d. 1190, 1195 (11th Cir. 2005.  "In fact, as courts have noted, moral turpitude and the unlawful acts regulations are distinct, and an unlawful act under 8 C.F.R. § 316.10(b)(3)(iii) does not necessarily have to be a crime involving moral turpitude in order to reflect adversely on an applicant's moral character."  *United States v. Hsu*, No. 2:14 CV 77, 2015 WL 13732656, at *4 (D. Utah July 21, 2015) (internal quotations omitted), *rep. and recommendation adopted*, 2016 WL 4179887 (D. Utah Aug. 8, 2016), *aff'd*, 695 F. App'x 393 (10th Cir. 2017).  Because the catch-all provision is in a broader, separate regulatory provision distinct from the enumerated provision regarding crimes of moral turpitude, which contains the petty offense exception, the logical statutory and regulatory construction[8] is that the catch-all provision, which includes convictions as well as unlawful acts, is not limited by the petty offense exception.  *See, e.g.*, *Khamooshpour v. Holder*, 781 F. Supp. 2d 888, 896 (D. Ariz. 2011) ("It is . . . reasonable to presume that, because 8 C.F.R. § 316.10(b)(3)(iii) employed the broader phrase 'unlawful acts that adversely reflect upon the applicant's moral character' as opposed to 'crimes involving moral turpitude,' it is meant to apply to a broader scope of unlawful activity.").  Consequently, Plaintiff's motion for summary judgment should be **DENIED**.

The next issue is whether Defendants are entitled to summary judgment for denying Plaintiff's Form N-400 Application.  While Plaintiff disputes that he committed the crimes he was arrested for and the exact procedure in which he came to enter a plea to disorderly conduct,

---

[8] "[S]tatutory language cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Chamber of Commerce of United States of Am. v. United States Dep't of Labor*, 885 F.3d 360, 372 (5th Cir. 2018) (internal quotations omitted).

there is no dispute of the following facts: (1) on June 9, 2017, Plaintiff kicked the alleged victim with his foot to get her to leave the room in her apartment in which he was staying (Defs.' App. at 39-40); (2) Plaintiff was arrested on September 30, 2018, and charged with Sexual Abuse in the Third Degree in violation of NYPL § 130.55, a B misdemeanor, and Forcible Touch—Intimate, in violation of NYPL § 130.52(01), a class A misdemeanor, for an incident that occurred on June 9, 2017 with the alleged victim. (Defs.' App. at 2, 6); (3) on March 13, 2019, Plaintiff pled guilty to the lesser charge of Disorderly Conduct in violation of NYPL § 240.20, which is classified by New York law as a violation (Defs.' App. at 5.); (4) Plaintiff was: (a) sentenced to a one-year conditional discharge; (b) ordered to pay a mandatory surcharge and other fees; and (c) ordered to complete a sex offender program and that failure to do so would result in in fifteen days in jail (Defs.' App. at 5.); and (5) also on March 13, 2019, a judge in New York entered an Order of Protection that was effective until and including March 12, 2021. (Defs.' App. at 4.)

As to Defendants' argument that Plaintiff has admitted to engaging in the crimes of Sexual Abuse in the Third Degree and Forcible Touching because he entered a temporary plea or pre-plea to these crimes, the Court finds and concludes that there is a genuine issue of material fact whether Plaintiff actually entered a pre-plea or a temporary plea to these initial charges. Thus, Defendants are not entitled to summary judgment regarding their argument that Plaintiff lacked good moral character because he fell within 8 U.S.C. § 1101(f)(3) by being in the class of persons described in 8 U.S.C. § 1182(a)(2)(A)(i)—that he was an alien convicted of, or who admits having committing, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude.[9]

---

[9] The Court notes that convictions for disorderly conduct are not generally considered crimes of moral turpitude. *See Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 304 (3d Cir. 2016); *Application for*

The next issue is whether Defendants are entitled to summary judgment on their claim that Plaintiff's Form N-400 Application was properly denied under 8 C.F.R. § 316.10(b)(3)(iii) because of his conviction for Disorderly Conduct adversely reflected upon his moral character and Plaintiff had failed to show extenuating circumstances.  In pleading guilty to Disorderly Conduct under New York law, Plaintiff admitted that he kicked the alleged victim with his foot. Plaintiff, however, denies that he committed any of the other accusations made by the alleged victim.  In addition, Plaintiff provides evidence that may show extenuating circumstances, including that he passed a polygraph test in which he was questioned about his conduct with the alleged victim and that, based upon such test, he had difficulty in completing his required sex offender treatment in Texas because the therapist found it unethical to continue to treat someone who was not a sex offender.

Because there are genuine issues of fact regarding the details surrounding and leading up to Plaintiff's conviction for Disorderly Conduct as well whether such acts and conviction adversely reflected upon Plaintiff's moral character to support the denial of his application for naturalization and whether Plaintiff has established extenuating circumstances, the Court finds and concludes that Defendants' motion for summary judgment should be **DENIED**.  *See, e.g.*, *Rangel v. Barrows*, No. 4:07-cv-279, 2008 WL 4441974, at *4  (E.D. Tex. Sept. 25, 2008) ("[In the absence of aggravating factors, a single DWI conviction is insufficient to deny an application for naturalization on the basis that the applicant lacks good moral character."); *Ragoonanan v. U.S. Citizenship & Immigr. Servs.*, No. 07-3461, 2007 WL 4465208, at *5 (D. Minn. Dec. 18, 2007) (granting applicant's motion for summary judgment as the Court found "no authority

---

*Waiver of Grounds of Inadmissibility*, 2010 WL 4686668, at *2 (DHS Apr. 16, 2010).  However, in limited circumstances, disorderly conduct has been found to be a crime involving moral turpitude if it involves some sort of soliciting charge or loitering for a lewd purpose.  *See, e.g., Rohit v. Holder*, 670 F.3d 1085 (9th Cir. 2012) (soliciting charge); *Hudson v. Esperdy*, 290 F.2d 879 (2d Cir.), *cert. denied*, 368 U.S. 918 (1961) (loitering for lewd purposes).

indicating that a single DWI conviction resulting in probation operates as a statutory or regulatory bar to a naturalization applicant who seeks to establish 'good moral character'" under the "catch-all" provision in 8 C.F.R. § 316.10(b)(3)(iii) (D. Minn. Dec. 18, 2007); *but see Amin*, 2010 WL 2034802, at *3-4 (granting summary judgment to USCIS for denying applicant's naturalization application on the grounds that he lacked good moral character due to his conviction for assault under the "catch all" provision set forth in 8 C.F.R. § 316.10(b)(3)(iii) as assault was an unlawful act and applicant failed to present any evidence of extenuating circumstances).

## V.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment [doc. 25.] be **DENIED** and Plaintiff's Cross Motion for Summary Judgment [doc. 28] be **DENIED**.  **In accordance with 8 U.S.C. 1421(c), the Court will return the case to the docket of the United States District Judge to conduct a hearing *de novo* on Plaintiff's Form N-400 Application and make its own findings of fact and conclusions of law**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to an action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation ("FCR") within fourteen (14) days after the party has been served with a copy of such FCR.   The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain

error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 20, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 6, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE