UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**PAUL MUHIRWA GITWAZA,**

   Gitwaza,

v.     No. 4:22-cv-00434-P

**MERRICK B GARLAND, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Paul Muhirwa Gitwaza's Complaint seeking a *de novo* review of his Form N-400 Naturalization Application, which was filed on September 16, 2020, and denied initially by Defendant United States Citizenship and Immigration Services ("USCIS"). ECF No. 1. For the reasons stated below, the Court **GRANTS** Gitwaza's Application for naturalization.

## BACKGROUND

Gitwaza is a pastor and the founder of Authentic Word Ministry, which has established churches worldwide, including in several U.S. states. Gitwaza has resided continuously in Dallas, Texas, since 2013, and has filed tax returns regularly. In September 2020, Gitwaza filed his naturalization application to become an official United States citizen. Gitwaza demonstrated his ability to read, write, and speak English, as well as his knowledge of U.S. history and government during his naturalization interview in January 2022.

However, USCIS denied Gitwaza's application, citing a March 2019 conviction for disorderly conduct in New York. This conviction stemmed from a June 2017 arrest where Gitwaza was initially charged with Sexual Abuse in the Third Degree and Forcible Touching. The charges were later reduced, and Gitwaza pleaded guilty only to disorderly conduct, a minor violation under New York law. Gitwaza was required to attend a sexual offender counseling program as part of his plea

agreement, which was terminated after three months following a polygraph test in Texas. Mr. Bruce Cameron, the program administrator, concluded that Gitwaza was not a sex offender and could not be treated as such.

In May 2022, Gitwaza filed a Complaint seeking *de novo* review of his denial and requested a hearing by this Court on his Form N-400 Naturalization Application. During a trial before this Court in February 2024, Gitwaza emphasized that he only agreed to plead to disorderly conduct because he believed it would not impact his immigration status as it qualified as a "petty crime" under the immigration statute. The Court is now prepared to rule on Mr. Gitwaza's Application.

## LEGAL STANDARD

When an applicant's naturalization is denied, they may seek review in the United States District Court where they reside, as per 8 U.S.C. § 1421(c). This statute mandates a *de novo* review by the court, which means the Court will independently assess the facts and legal conclusions without deference to the previous administrative decision. Unlike many administrative reviews which apply a deferential "arbitrary and capricious" standard, the court's *de novo* review here requires a fresh, comprehensive evaluation of the evidence presented at trial. *See Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013). If the court finds that the denial was improper and that the applicant qualifies for naturalization, it will typically grant the naturalization application and instruct USCIS to schedule the applicant's oath ceremony. *See Vahid-Dastjerdi v. Mueller*, No. CV M-09-84, 2011 WL 13135580, at *3–4 (S.D. Tex. Aug. 1, 2011) (Crane, J.) (finding that the plaintiff satisfied all requirements for naturalization and directing the plaintiff to file a proposed final judgment reflecting the court's findings).

Regarding the criteria for naturalization, Congress holds the authority to establish rules for the process. *See Kariuki*, 709 F.3d at 503. In reviewing a denial, the court ensures that all statutory requirements for naturalization are strictly met. *Id.* at 504. The burden of proof lies with the applicant to demonstrate eligibility for citizenship in all respects. *See Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967). The government maintains a vested interest in

ensuring that only qualified individuals are granted citizenship, with any doubts being resolved in favor of the United States. *Id.*

Under the Immigration and Nationality Act (INA), an applicant must meet specific requirements, including:

1. Continuous residence in the United States for at least five years immediately preceding the application;
2. Continued residence in the U.S. from the application date until citizenship is granted;
3. Demonstration of good moral character, adherence to the principles of the Constitution, and a disposition toward the good order and happiness of the United States throughout the relevant period.

8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a). Applicants must prove their eligibility for naturalization by a preponderance of the evidence. *See* 8 C.F.R. § 316.2(a). While some cases have suggested a higher burden of proof, the Fifth Circuit has maintained that the statutory standard of a preponderance of the evidence is applicable. *See Oropeza v. Napolitano*, No. CIV.A. H-09-2604, 2010 WL 4878837, at *7 (S.D. Tex. Nov. 23, 2010) (Werlein, Jr., J); *see also Morales v. Limon*, No. CIV.A. 7:19-CV-319, 2020 WL 4463094, at *5 (S.D. Tex. Aug. 4, 2020) (Alvarez, J.). This means the applicant must show that it is more likely than not that they meet all the requirements for naturalization.

## ANALYSIS

Gitwaza argues that his conviction for disorderly conduct is a "petty crime" that should not bar him from establishing good moral character. *See* ECF No. 1 at 5. The "petty offense" exception exempts "an alien who committed only one crime," which interrupts the period, if "the maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and . . . the alien was not sentenced to a term of imprisonment in excess of 6 months." 8 U.S.C. § 1182(a)(2)(A)(ii). Disorderly conduct under New York law is a violation, not a crime, and carries a maximum sentence of fifteen days. *See* N.Y. Penal Law §§ 240.20, 70.15. He asserts that his plea to disorderly conduct, which he argues falls under this "petty offense

3

exception," should not adversely reflect upon his moral character. *See* ECF No. 1 at 5.

The Government, however, argues that Gitwaza's conduct leading to his conviction constitutes an unlawful act that adversely reflects upon his moral character, citing the "catch-all" provision in 8 C.F.R. § 316.10(b)(3)(iii). The "catch-all" provision in the statutory scheme provides that non-enumerated acts or characteristics can, in the absence of extenuating circumstances, demonstrate that an applicant lacks good moral character. *See* 8 U.S.C. § 1101(f) ("The fact that any person is not within one of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."); 8 C.F.R § 316.10(b)(3)(iii) (explaining that in the absence of extenuating circumstances an "applicant shall be found to lack good moral character if, during the statutory period, the applicant: . . . (iii) [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts" are not specifically enumerated in the statute or regulations).

Defendants contend that Gitwaza's story regarding the events that led to his arrest lacks credibility, further undermining his claim of good moral character. *See* ECF No. 48 at 5–6. Therefore, the Court must determine whether Gitwaza's story is credible and, even if credible, if the incident that occurred in New York, and his plea, reflect poor moral character to preclude him from being eligible for United Sates citizenship. The Court does so below.

**A. March 2017 Arrest**

The Court finds that while disorderly conduct is a minor offense, the circumstances surrounding Gitwaza's arrest and subsequent plea do raise questions concerning his moral character that must be addressed. Moreover, the requirement to attend a sexual offender counseling program, albeit terminated early, is no small thing.

During the trial, Gitwaza testified that the charges against him were the result of a misunderstanding and that he never engaged in any inappropriate conduct with the alleged victim. *See* ECF No. 50 at 17–24. He maintained that his actions were misinterpreted and that he agreed

to the plea deal to avoid the stress and uncertainty of a trial. *Id.* at 24. Gitwaza's testimony was supported by Mr. Bruce Cameron, his sex offender program administrator, who stated that Gitwaza did not exhibit any behavior consistent with that of a sex offender and that the polygraph test supported the notion that Gitwaza did not require more counseling. *Id.* at 39.

The Government presented evidence to the contrary, including the affidavit of Detective Shields who conducted the initial investigation. *See* ECF No. 27 at 4. Detective Shields' affidavit detailed the alleged victim's account of the incident, in which she claimed that Gitwaza forcibly touched her breasts during a prayer session. *Id.*

The Court must, however, scrutinize the reliability of the evidence presented. It is significant to note that the alleged victim did not testify, either during the investigation or at trial. The only statements from the victim were unsworn statements made to Detective Shields, and Gitwaza was never presented the opportunity to confront his accuser in an adversarial proceeding. The absence of direct testimony from the alleged victim casts doubt on the robustness of the claims against Gitwaza. The Court is left to rely solely on Detective Shields' recounting of the alleged victim's statements, which lacks the corroborative strength of direct testimony under oath. Gitwaza has given multiple statements under penalty of perjury that the alleged incidents stemming from his arrest were a misunderstanding and he only took the plea deal to avoid disrupting his citizenship chances. The Court concludes that Gitwaza has satisfied his burden by a preponderance of the evidence and does not discern any evidence from the government that properly challenges the veracity of those sworn statements. For these reasons, the Court views his plea to disorderly conduct a "petty offense" and must now determine whether pleading guilty to a petty offense precludes Gitwaza from having good moral character. It does so below.

**B. Moral Character**

To determine whether Gitwaza meets the good moral character requirement, the Court must evaluate the totality of the circumstances.

The statutory period for which the applicant must show good moral character begins five years prior to the date the applicant filed the application for naturalization and continues through the date the applicant takes the oath of citizenship. *See* 8 U.S.C. § 1427(a) (3); 8 C.F.R. § 316.10(a)(1). The determination of good moral character, however, is not limited to the statutory five-year period. Rather, USCIS "may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to" the five-year period. *See* 8 C.F.R. § 316.10(a)(2). Whether an applicant exhibits the requisite good moral character is evaluated "on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." *Id.*

The regulations provide general guidelines as well as specific examples of acts that demonstrate a lack of good moral character. For example, an applicant will be considered as lacking good moral character if he has committed a crime involving moral turpitude or engaged in other specified conduct. *Id.* at (b)(1)-(2). In a type of "catch-all" provision, the regulations also provide that, absent a showing by the applicant of extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:

> (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).

*Id.* at (b)(3). *See, e.g., United States v. Mwalumba,* 688 F. Supp. 2d 565, 570 (N.D. Tex. 2010) (Fish, J.) (Recognizing 8 C.F.R. § 316.10(b)(3)(iii) is a "catch-all" provision).

Here, it is clear from Gitwaza's background that he has been actively involved in his community, as a spiritual leader in his community through his ministry. With respect to his alleged conduct, the Court must determine whether (1) his conviction of disorderly conduct charge itself precludes citizenship and (2) whether the underlying allegations immune his character.

*First,* while disorderly conduct is a violation under New York law and not a crime, the context of the conviction must be considered. Gitwaza testified under oath that his plea deal was a strategic decision to avoid the uncertainty of a trial, a common legal tactic. *See* ECF No. 50 at 24. The requirement to attend a counseling program, which was later terminated, does not necessarily reflect negatively on his character, especially given Mr. Cameron's testimony that the program was discontinued because Gitwaza was not a sex offender. *See id.* at 39. Gitwaza has maintained a clean record before and since his plea, with no further incidents of legal trouble. His continuous residence, regular tax filings, and active participation in the community demonstrate a commitment to upholding the principles of good moral character required for naturalization.

*Second,* while the Government argues that his disorderly conduct plea is a crime involving moral turpitude, the Court once again notes that the only direct evidence of the alleged incident comes from Detective Shields' affidavit based on his interview with the alleged victim. *See* ECF Nos. 48 at 5; 27 at 4. The alleged victim did not testify, and there was no corroborative evidence presented to substantiate her claims. This lack of direct testimony from the alleged victim raises questions about the reliability and completeness of the account provided by the Defendants. Gitwaza was not convicted of the initial charges of Sexual Abuse in the Third Degree and Forcible Touching. These charges were reduced to disorderly conduct, a minor violation. Importantly, the plea to disorderly conduct does not equate to an admission of the far more serious charges initially brought against him. The absence of a plea or conviction for a sexual crime significantly undermines the Governments' argument that Gitwaza conduct should bar his naturalization.

The termination of the sexual offender counseling program and the results of the polygraph test also weigh in favor of Gitwaza. Mr. Cameron, who administered the counseling program, testified that Gitwaza did not exhibit any behavior consistent with a sex offender, and the program was terminated early because Gitwaza passed a polygraph test, supporting his recollection of the incident. *See* ECF No. 50 at 39.

7

While the Court acknowledges that polygraphs tests can be unreliable, and the Court does not rely on the results here for their own sake, the test combined with the professional opinion of Mr. Cameron support Gitwaza's argument. In particular, the testimony of Mr. Cameron most strongly supports Gitwaza's argument that the disorderly conduct plea was not indicative of poor moral character. *See id.* at 24.

Furthermore, Gitwaza's consistent involvement in his ministry and community highlights his dedication to living a life of integrity and service. This along with all the testimony presented by Mr. Gitwaza and Mr. Cameron reinforces the Court's assessment of Gitwaza's good moral character and that he has made a showing beyond a preponderance of the evidence that he possesses moral character becoming of United States citizenship.

Given the denial of his application was predicated on this 2017 arrest, the Court finds by a preponderance of the evidence that Mr. Gitwaza has met and satisfied all of the requirements to achieve his American citizenship. Accordingly, Mr. Gitwaza is eligible for naturalization and his application for that benefit is hereby approved. The Court **REMANDS** the case to USCIS solely for the purpose of naturalizing Mr. Gitwaza. USCIS shall schedule an oath ceremony for him as soon as possible and shall issue a Certificate of Naturalization to Mr. Gitwaza that same day.

**C. Attorney's Fees**

The Court notes that Gitwaza seeks an award of his attorneys' fees incurred in prosecuting this action. *See* ECF No. 44 at 9; *see generally* 28 U.S.C. § 2412. Accordingly, to facilitate a Final Judgment incorporating the appropriate fees and costs, the Court **ORDERS** Gitwaza to submit appropriate evidence of the relevant fees and costs, along with briefing regarding the reasonableness of same, **on or before July 22, 2024**. Thereafter, should Defendants wish to contest Plaintiff's requested fees or costs, they shall file responsive briefing **on or before July 29, 2024.**

## CONCLUSION

After considering the totality of the circumstances, the Court finds that Mr. Gitwaza has demonstrated by a preponderance of the evidence that he possesses the requisite good moral character for naturalization. This Country has been principled on the idea that every man, woman, and child is innocent until proven guilty. The Government wants to hold Mr. Gitwaza legally responsible for actions that were never proven in a court of law and never supported by concrete evidence. The incident leading to his plea for disorderly conduct and the dearth of corroborative evidence cannot and will not be used to prevent Mr. Gitwaza from earning citizenship. Accordingly, the Court **GRANTS** Gitwaza's application for naturalization.

**SO ORDERED** on this **8th day of July 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE

9